**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITADELLE INTERESTS, LLC** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **Civil Action No. 1:14-cv-02183-EGS** |
| ) | |
| **FREDERIK DE PUE** ) | |
| ) | |
| **Defendant** ) | |
| * * * * * * * * * * * * * * * * * * * * * * ) | |
| **FREDERIK DE PUE** ) | |
| ) | |
| **Defendant/Counter Plaintiff** ) | |
| ) | |
| v. ) | |
| ) | |
| **CITADELLE INTERESTS, LLC** ) | |
| ) | |
| **Plaintiff/Counter-Defendant** ) | |

**OPPOSITION TO CITADELLE INTERESTS, LLC'S
MOTION TO DISMISS COUNTERCLAIM**

Frederik De Pue ("De Pue"), by counsel, hereby files this Opposition to the Motion to Dismiss Counterclaim (the "Motion to Dismiss") filed by Citadelle Interests, LLC ("Citadelle") and states that the Motion to Dismiss should be denied for the reasons set forth below. De Pue submits that he has sufficiently pled causes of action for both breach of contract and tortious interference, and as such, the Motion to Dismiss should be denied.

**I.   SUMMARY OF ARGUMENT**

Citadelle had to ignore the precise allegations made in the Counterclaim to file the Motion to Dismiss. The Counterclaim specifically alleges that Citadelle, with actual knowledge of De Pue's catering contracts, prevented the performance of such contracts, which caused damage to De Pue. This, clearly states a claim of relief for tortious interference.

Second, De Pue alleges facts to sustain a claim for relief for breach of contract. Citadelle suggests (wholly unsupported by law) that because De Pue is a guarantor, De Pue does not have standing to bring a cause of action pursuant to a breach that occurred pursuant to the provisions of a lease. However, because De Pue has been personally injured by Citadelle's breach of lease and guaranty, De Pue certainly has standing to bring this claim of relief for breach of contract. De Pue's specific allegations that Citadelle breached its contract by locking De Pue out of the Premises without justification or excuse and improperly sending a default to Bord'Eau and accelerating the rent, which caused damage to De Pue, sufficiently states a cause of action for breach of contract.

Accordingly, and as explained in more detail below, the Motion to Dismiss should be denied.

## II.　STANDARD FOR DISMISSAL

When analyzing a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court construes the claims in the Counterclaim in a light most favorable to the non-moving party, and assumes the facts alleged in the complaint are true. *Sledge v. United States*, 883 F. Supp. 2d 71, 81 (D.D.C. 2012). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A party, however, "need not plead all elements of her prima facie case in the complaint to survive a 12(b)(6) motion to dismiss." *Bratton v. Starwood Hotels & Resorts Worldwide, Inc.*, 2014 WL 4100110, at *2 (D.D.C. Aug. 21, 2014).

When faced with a motion to dismiss, a court is required to "evaluate all inferences derived from the allegations contained in the Counterclaims in the light most favorable to the [non-moving party]." *Bank of Am., N.A. v. F.D.I.C.*, 908 F. Supp. 2d 60, 99 (D.D.C. 2012).

"So long as the pleading suggests a plausible scenario to show that the pleader is entitled to relief, a court may not dismiss." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). As set forth by the United States Court of Appeals for the District of Columbia:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .

*Id.* (quoting *Iqbal*, 556 U.S. at 678 (2009)).

### III.   ARGUMENT

#### A.   De Pue States a Cause of Action for Tortious Interference

Contrary to Citadelle's argument in the Motion to Dismiss, De Pue alleged sufficient facts in the Counterclaim to sustain a cause of action for tortious interference. The elements of a prima facie case for tortious interference are: (1) the existence of a valid or contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) damages resulting from the breach. *Murray v. Wells Fargo Home Mort.*, 953 A.2d 308, 325 (D.C. 2008). As explained in detail below, facts to support each of these elements have been pled in the Counterclaim, and as such, the Motion to Dismiss should be denied.

##### 1.   *De Pue Alleged the Existence of a Valid or Contractual or Other Business Relationship with Catering Clients*

As an initial matter, Citadelle alleges that, if anything, De Pue alleges that 42nd Degree Catering Company, LLC ("42nd Degree") had existing catering contracts sufficient to sustain a claim of relief for tortious interference, but De Pue did not. However, as the owner of 42nd

Degree[1], De Pue specifically alleged that his catering company had existing catering contracts, which were to be performed by De Pue, as the caterer, at the Premises. S*ee e.g.* ¶27 ("Frederik De Pue's catering company"); ¶29 ("Hossein and/or his wife, Dahlia Fateh informed **Frederik De Pue's catering clients** with whom agreements had already been reached that they could arrange for the use of Bord'Eau's premises only if the client used a **caterer** other than Frederik De Pue.") (emphasis added).

As described in detail below, the damage caused by the tortious interference is to De Pue individually. As such, even if the catering contracts were with 42nd Degree, De Pue, the owner of 42nd Degree, was the party damaged by the intentional interference (as undisputedly pled in the Counterclaim). De Pue's allegations in the Counterclaim that his catering company had several, existing catering contracts to be performed at the Premises sufficiently allege the existence of a valid or contractual or other business relationship for purposes of satisfying the first element of tortious interference. Even more, as pled in the Counterclaim, De Pue is the caterer for 42nd Degree. The tortious interference with 42nd Degrees' contracts specifically damaged De Pue. Accordingly, there can be no doubt that De Pue was at least the beneficiary of these contracts.

Next, Citadelle's argument that these existing catering contracts do not form business expectancies is without any legal support. To the contrary, cases pleading the existence of a

---

[1] De Pue takes alternative positions in the Counterclaim as to the ownership of 42nd Degree. One position is based on allegations made by the wife of Citadelle's owner in a non-related litigation that 42nd Degree is still owned by De Pue because it was never contributed to Bord'Eau. *See* ¶¶ 27-29 (taking the position that De Pue is the owner of 42nd Degree). Under this theory, De Pue, as owner of 42nd Degree, clearly has been damaged by Citadelle's interference with 42nd Degrees' catering contracts and De Pue, as the party suffering damage, can bring a tortious interference claim based on Citadelle's interference with his company's contracts. Nonetheless, even if 42nd Degree was contributed to Bord'Eau, as alleged in the Counterclaim at ¶9, as the owner of a member of Bord'Eau, De Pue has been damaged and has standing to bring this cause of action in the Counterclaim.

valid business relationship do so by pointing to anticipated transactions—here, the specific catering contracts that De Pue's catering company had entered into for December.  *See e.g., Browning v. Clinton,* 292 F.3d 235 (D.C.Cir. 2002) (a prospective book deal); *Kimmel v. Gallaudet Univ.,* 639 F.Supp.2d 34, 45 (D.D.C. 2009) (three potential sources of prospective employment); *Carr v. Brown,* 395 A.2d 79, 82-84 (D.C.1978) (development of a specific property in the District of Columbia); *Dem. State Comm. of D.C. v. Bebchick,* 706 A.2d 569 (D.C. 1998) (opportunity to represent a trustee in a specific litigation).  There is no need for a plaintiff to "plead every conceivable fact of face dismissal of his claim," a party need only "allege that a contract existed."  *Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, 2014 WL 2598748, at *5 (D. D.C. June 11, 2014) (quoting *Nattah v. Bush,* 605 F.3d 1052, 1058 (D.C. Cir. 2010)); *Okusami v. Psychiatric Inst. of Washington, Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992) (physician was not required to identify specific patients with whom defendants interfered—physician's claim for tortious interference was adequately pled when he referred to defendants' interference with "Plaintiff's business relationship with his patients").  De Pue's clear allegations that there were existing catering contracts which Citadelle knew about is more than sufficient to satisfy the first element that a valid or contractual or other business relationship existed.  As such, the Motion to Dismiss should be denied.

### 2.    *De Pue Pled that Citadelle had Actual Knowledge of the Catering Contracts.*

Despite the numerous facts alleged in the Counterclaim that Citadelle knew about De Pue's catering contracts, Citadelle still argues that Defendant does not allege that Citadelle knew about any such catering contracts.  De Pue alleges in the Counterclaim that Citadelle's owner assured De Pue that he could use the premises for catering to honor existing catering contracts.  *See* Counterclaim, ¶¶20, 22.  Even more, De Pue alleges in the Counterclaim that **Citadelle**

caused Bord'Eau and De Pue to lose revenue by refusing to allow the catering events to occur at the premises even though **Citadelle knew** that the revenue from these events would be deposited into Bord'Eau's bank account and would be used to fund either Bord'Eau or Table expenses. *See* Counterclaim, ¶ 25.  Certainly, these facts and more, sufficiently allege that Citadelle had knowledge of the existing catering contracts.

Citadelle's suggestion that if Citadelle's owner had knowledge of the catering contracts, Citadelle did not necessarily have knowledge of the same is unpersuasive and improper to allege in the Motion to Dismiss.  What was clearly pled in the Counterclaim is that both Citadelle's owner **and Citadelle** had knowledge of the existing catering contracts, which sufficiently satisfies the second element of tortious interference.  Accordingly, the Motion to Dismiss should be denied.

### 3. *De Pue Pled that Citadelle Intentionally Interfered with the Catering Contracts.*

De Pue has pled in the Counterclaim that Citadelle, with knowledge of the catering contracts, intentionally interfered with the contracts by preventing De Pue from performing the contracts at the Premises.  As pled in the Counterclaim, "Frederik De Pue's catering company had several catering events **scheduled** at the Premises for December, 2014." *See* Counterclaim, ¶27 (emphasis added).  Further, "[i]n December, 2014, Hossein and **Citadelle made sure** that Frederik De Pue and 42 Degree **could not use the premises** for already scheduled catering events." *See* Counterclaim, ¶28 (emphasis added). If this was not clear enough, De Pue alleged in the counterclaim that "Hossein and **Citadelle intentionally** took actions that were designed to interfere with Frederik De Pue's catering business and his catering clients." *See* Counterclaim, ¶30 (emphasis added).  As emphasized in the facts above, Citadelle made sure that De Pue could not use the Premises for already scheduled catering events.  As such, it is clear that the

Counterclaim sufficiently pleads that Citadelle intentionally interfered with the catering contracts by preventing the performance of the contracts, and the Motion to Dismiss should be denied.

### 4. *De Pue was Damaged by the Intentional Interference by Citadelle.*

Finally, De Pue has pled sufficient facts in the Counterclaim which prove that based on Citadelle's intentional interference with the catering contracts, De Pue has been damaged. Again, Citadelle begins by arguing that any alleged damaged that occurred by virtue of Citadelle's intentional interference was to 42nd Degrees, not to De Pue. Nonetheless, as explained in detail in Section 1, *supra*, *if* De Pue is the owner of 42nd Degrees, by preventing catering contracts from occurring at the Premises, De Pue was undoubtedly damaged. As the owner of 42nd Degrees, De Pue was the beneficiary of any catering contract, and as such, any catering contract that could not be completed was a loss to De Pue. *See* Counterclaim, ¶25 ("Citadelle caused Bord'Eau and Frederik De Pue to lose revenue by refusing to allow 42 Degree to cater events at the Bord'Eau premises…"); *See also,* Counterclaim, ¶31 ("Citadelle's interference caused Frederik De Pue to lose existing catering clients business.").

Accordingly, De Pue alleges sufficient facts in the Counterclaim to suggest that he, as the owner of 42nd Degrees, has been damaged by Citadelle's intentional acts in preventing the performance of the catering contracts.

### B. De Pue States a Cause of Action for Breach of Contract

#### 1. *Breach of Contract is Properly Asserted as a Counterclaim*

Citadelle contends that De Pue improperly pleads breach of contract as a counterclaim, when it should have been pled as an affirmative defense. However, Citadelle cites to no case law for this proposition. So long as De Pue states a claim for relief for breach of contract, such claim can be made in a counterclaim. *Millennium Square Residential Ass'n v. 2200 M St. LLC*,

952 F. Supp.2d 234, 249-50 (D.D.C. 2013).  Furthermore, De Pue's claim that Citadelle breached its contract with De Pue, as guarantor, is proper as a counterclaim and not as an affirmative defense because De Pue is seeking monetary relief against Citadelle for its breach.

### 2. *De Pue has Standing as the Guarantor under the Lease*

Next, Citadelle argues that as the guarantor under the Lease, De Pue does not have standing to assert a claim for breach of contract pursuant to the provisions of the Lease. Nonetheless, Citadelle (which has the burden of proof), once again, cites to <u>no cases</u> which stand for the proposition that a guarantor, who is directly injured by virtue of the Landlord's breach of lease, cannot sue for redress under the Lease and Guaranty.  To the contrary, "[i]ndividuals who sign a lease agreement as guarantors are required to meet their burden of demonstrating that they have standing to bring an action for a breach of the agreement, **absent some indication of an injury in fact**."  52 C.J.S. Landlord & Tenant § 478.  Here, De Pue has certainly alleged injury in fact.

There are three components of the "injury in fact" requirement for standing: 1) a party must show that he personally has suffered some actual or threatened injury as a result of the alleged conduct of the defendant; 2) a party must show that the injury can fairly be traced to the challenged conduct of the defendant; and 3) the alleged injury is likely to be redressed by a favorable decision. *Animal Legal Def. Fund, Inc. v. Glickman, 154 F.3d 426, 431 (D.C. Cir. 1998).* De Pue has alleged in the Counterclaim that he personally suffered an injury as a result of Citadelle's breach of lease.  By improperly holding Bord'Eau in default under the Lease, Citadelle was then able to lock De Pue out of the premises and prevent him from performing contracts with catering clients as well as accelerate damages and hold De Pue responsible for a sum of rent not due.  *See* Counterclaim, ¶¶37-43.  This is damage not only to Bord'Eau, but to

De Pue personally, the beneficiary of all the catering contracts and the guarantor under the Lease.  Second, this injury is directly traceable to Citadelle, which, as pled in the Counterclaim, locked De Pue out of the Premises and improperly defaulted Bord'Eau under the Lease and as a result of this improper default, demanded payment from De Pue pursuant to the Guaranty. Finally, the injury to De Pue will be redressed if De Pue is paid for the contracts that would have occurred had De Pue not been locked out of the Premises, and De Pue is paid for the loss he incurred from Citadelle improperly taking possession of the Premises.

Accordingly, based on the facts pled in the Counterclaim, De Pue has alleged injury in fact and has standing to bring a cause of action for breach of contract based on the Landlord's breach of the Lease and Guaranty.

### 3. *De Pue Alleged in the Complaint that Citadelle Breached the Lease by Failing to Comply with Mr. Fateh's Representations*

Next, Citadelle argues that Mr. Fateh's representation that the rent would be $18,000.00 per month for a year does not support any inference of a modification to the lease because the landlord is Citadelle, not Mr. Fateh.  Whether or not Mr. Fateh was acting on behalf of Citadelle is not an issue to be resolved on this Motion to Dismiss.  All that is to be resolved on this Motion to Dismiss is whether the Counterclaim pleads sufficiently a claim for relief for breach of contract, which as discussed below, has been done.  Further, when faced with a motion to dismiss, a court is required to "evaluate all inferences derived from the allegations contained in the Counterclaims in the light most favorable to the [non-moving party]." *Bank of Am., N.A. v. F.D.I.C.*, 908 F. Supp. 2d 60, 99 (D.D.C. 2012). "So long as the pleading suggest a plausible scenario to show that the pleader is entitled to relief, a court may not dismiss." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted).  If, as alleged, Mr. Fateh is the owner of Citadelle, and Mr. Fateh was making allegations specifically

9

related to the Lease, it can be reasonably inferred from the facts alleged that Mr. Fateh was acting in his capacity as owner of Citadelle.[2]

### 4. *De Pue Sufficiently Stated a Cause of Action for Breach of Contract*

As alleged in the Counterclaim, Mr. Fateh is the owner of Citadelle. *See* Counterclaim, ¶20. Mr. Fateh, in his capacity as owner of Citadelle, represented to De Pue in writing that the rent for the premises would be $18,000. *See* Counterclaim, ¶38. De Pue also alleged that, based on Mr. Fateh's representations, Citadelle wrongfully locked De Pue out of the Premises, which caused damage to De Pue. See Counterclaim, ¶42 ("Hossein assured Frederik De Pue that the Premises could be used to cater [events] through at least December 31, 2014, and then refused Frederik De Pue access to the Premises."); *see also* Counterclaim, ¶43 ("Citadelle's actions in breaching the lease have caused damages to De Pue.").

Under District of Columbia law, these allegations sufficiently state a cause of action for breach of contract. *See Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (the elements of breach of contract are (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach). As such, and for the reasons discussed herein, the Motion to Dismiss should be denied.

Citadelle's argument that the Premises were to be used for a restaurant only is not an issue to be resolved on a Motion to Dismiss, and whether or not catering falls within the stated purpose is certainly, at a minimum, an issue of fact. Assuming *arguendo*, De Pue pled in the Counterclaim that Citadelle operated as a landlord with actual knowledge that Bord'Eau had

---

[2] Certainly, he had apparent authority and likely actual authority.

catering contracts to be performed at the Premises.  As such, Citadelle acquiesced to catering at the Premises.[3]

### 5. *De Pue Specifically Requests Relief from Citadelle in Damages to be Proven at Trial*

Citadelle cites to non-binding cases for the proposition that because there is no Ad Damnum clause in the Counterclaim, the cause of action for breach of contract must be dismissed.  This argument ignores the "wherefore" clause of the cause of action which specifically requests relief for Citadelle's breach to be determined at trial.  De Pue is not obligated to state the precise amount of damages as a result of the breach at this stage in the litigation.

In the District of Columbia, only once "the Plaintiff has proven that it in fact suffered a loss (*i.e.,* suffered damages), such that Defendants are liable for a breach of contract claim, does the Court move to the next stage—*i.e.,* the damages determination stage." *Red Lake Band of Chippewa Indians v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1, 13 (D.D.C. 2009).  The Plaintiff must allege that damages have been sustained, but the burden is not a burdensome one. *Id*.  The Plaintiff need only show that the "responsibility for damages is clear," not that "the amount thereof be ascertainable with absolute exactness or mathematical precision." *Id*.  As such, De Pue has sufficiently alleged that Citadelle's breach has caused him damages, and the Motion to Dismiss should be denied.

## IV.   CONCLUSION

For the reasons stated above, the Motion to Dismiss should be denied.

---

[3] Citadelle also cites to one, non-applicable, case for the proposition that De Pue failed to allege that it satisfied its conditions precedent in the contract, and therefore, its claim for breach of contract should be dismiss.  That case, however, did not deal with a landlord-tenant relationship where the landlord improperly defaulted the tenant and took possession, which caused the tenant and the guarantor harm.  Because De Pue properly alleged <u>all elements</u> of a breach of contract action, the Motion to Dismiss should be denied.

Respectfully submitted,

**SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.**


By:   /s/  Michael J. Lichtenstein
      Michael J. Lichtenstein, Esquire
      DC Bar No. 419302
      Amy M. Simon, Esquire
      DC Bar No. 1019228
      12505 Park Potomac Avenue, Sixth Floor
      Potomac, Maryland 20854
      TEL:   (301) 230-5231 (Lichtenstein)
             (301) 945-9238 (Simon)
      FAX:   (301) 230-2891
      Email: mjl@shulmanrogers.com
             asimon@shulmanrogers.com

*Attorney for Defendant/Counter-Plaintiff*

### CERTIFICATE OF SERVICE

The following parties received electronic notice of this filing – **Opposition to Citadelle Interests, LLC's Motion to Dismiss Counterclaim and proposed Order** – this 12th day of February, 2015:

    Joseph H. Kasimer        jkasimer@kasimerlaw.com
    *Counsel for Plaintiff*

    Gina L. Schaecher        gschaecher@kasimerlaw.com
    *Counsel for Third Party Defendant Hossein Fateh*


   /s/   Michael J. Lichtenstein
   Michael J. Lichtenstein

F: 119936.00006
5248145_1.docx